UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| **FOLI FOLLY-NOTSRON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No.** |
| ) | **1:22-cv-11983-WGY** |
| **180 BROADWAY LIQUOR INC, aka** ) | |
| **CHELSEA LIQUOR MART, and ALLISON** ) | |
| **DIAZ (individually),** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**REPORT AND RECOMMENDATION**

LEVENSON, U.S.M.J.

**INTRODUCTION**

Plaintiff Foli Folly-Notsron (Folly-Notsron) has sued 180 Broadway Liquor Inc., aka

Chelsea Liquor Mart ("Chelsea Liquor Mart") and Allison Diaz (together, "Defendants").

Plaintiff claims he was refused service and subjected to racial and disability-based epithets when

he asked a store employee, Diaz, to double-bag his purchase of beer.  Complaint, Docket No. 1.

The Complaint seeks relief under a variety of federal and state anti-discrimination laws.

Before the Court is Defendants' Motion to Dismiss the Complaint for failure to state a

claim.  Docket No. 6.  Defendants have submitted a Memorandum in support of the motion

(Docket No. 7), and Plaintiff has submitted a Memorandum in opposition (Docket No. 9).

Judge Young has referred this motion to me for a report and recommendation.  Docket

No. 17.

As discussed below, Plaintiff has alleged several legally viable claims of discrimination on the basis of race and disability.  A couple of Plaintiff's claims, however, are subject to dismissal as the facts alleged do not satisfy the elements of the statutes in question.

## I.     Factual Allegations in the Complaint

The Complaint alleges that Folly-Notsron, who is Black and is blind, was subjected to discrimination on account of his race and disability.  Docket No. 1, at ¶ 1.

According to the Complaint, Folly-Notsron had previously shopped at the Chelsea Liquor Mart, his local liquor store, and regularly asked for assistance from store clerks with his purchases.  *Id.* at ¶¶ 26-27.  On the afternoon of June 18, 2020, Folly-Notsron went to the Chelsea Liquor Mart to purchase five beers.  *Id.* at ¶¶ 25, 28.  Diaz placed the beers in a bag, and Folly-Notsron asked Diaz to double bag the items; Diaz refused.  *Id.* at ¶¶ 29-33.  Folly-Notsron complained, and Diaz allegedly responded by saying, "Go somewhere else.  I don't need your *Black, Blind* money.  Go somewhere else."  *Id.* at ¶¶ 34-35 (emphasis in original).  Folly-Notsron responded to Diaz, "this is America, we have laws here," and argued "that the business is open to the public, and he had a right to be there and acquire the products."  *Id.* at ¶¶ 37-38.

The Complaint further alleges that Folly-Notsron called the police to report the incident. [1] *Id.* at ¶ 39.  The police arrived after "some minutes" and spoke to both Folly-Notsron and Diaz. *Id.* at ¶¶ 40-41.  After speaking with Folly-Notsron and Diaz, "the officer(s) directed Ms. Diaz to sell the products to Mr. Folly-Notsron."  *Id*. at ¶¶ 41-42.  Diaz completed the sale.  *Id.* at ¶ 43. The Complaint further alleges, "[u]pon information and belief, after the transaction was

---

[1] The Complaint does not specify the time when Folly-Notsron called the police, whether he left the store to make the call, what was said on the call, or when the police arrived on the scene.

completed [Diaz] then told the police officer(s) that 'they' did not want Mr. Folly-Notsron to

shop in the store anymore." *Id.* at ¶ 44.

## II.    The Legal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to

dismiss a complaint for failure to state a claim upon which relief can be granted.

To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"In conducting this review, [the court] accept[s] the truth of all well-pleaded facts and

draw[s] all reasonable inferences therefrom in the pleader's favor." *Grajales v. P.R. Ports Auth.,*

682 F.3d 40, 44 (1st Cir. 2012) (citation omitted).  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

The plausibility inquiry has two steps.  *See García-Catalán v. United States,* 734 F.3d

100, 103 (1st Cir. 2013).  "First, the court must distinguish 'the complaint's factual allegations

(which must be accepted as true) from its conclusory legal allegations (which need not be

credited).'" *Id.* (quoting *Morales–Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)).

"Second, the court must determine whether the factual allegations are sufficient to allow the

court to draw 'the reasonable inference that the defendant is liable for the misconduct alleged.'"

*Id.* (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)).  "If the factual allegations

in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the

realm of mere conjecture, the complaint is open to dismissal." *SEC v. Tambone,* 597 F.3d 436,

44 (1st Cir. 2010) (citing *Twombly,* 550 U.S at 555).

3

### III.     Analysis

As detailed below, I recommend that the Court deny the Motion to Dismiss as to Counts I, II, IV, VI, VII, and VIII, and grant the motion as to Counts III and V.

### a.   Counts I & II (against all Defendants): Denial of Equal Rights and Property Rights [42 U.S.C. § 1981 and § 1982]

In Counts I and II, Plaintiff has plausibly alleged discrimination on the basis of race that interfered with his right to make contracts and his right to purchase property, in violation of 42 U.S.C. § 1981 and § 1982.

By its terms, § 1981 prohibits both public and private racial discrimination in specified activities, including the making and enforcement of contracts.  42 U.S.C. § 1981.  Section 1982, in turn, prohibits public and private racial discrimination in connection with property rights, including the right to purchase personal property.  42 U.S.C. § 1982.  Violations under § 1981 and § 1982 are "traditionally construed in *pari materia*."  *Garrett v. Tandy Corp.,* 295 F.3d 94, 103 (1st Cir. 2002).  As far as the elements to be proved, the claims in Counts I and II are essentially identical.  However, because there are many more reported decisions under § 1981 than § 1982, most of the reported decisions refer only to the former.

At a level of generality, the First Circuit has identified the following elements of a § 1981 claim: (1) the plaintiff is a member of a racial minority; (2) the defendant discriminated against the plaintiff on the basis of his race; and (3) the discrimination implicated one or more of the activities in the statute.  *See Hammond v. K-Mart Corp.*, 733 F.3d 360, 363 (1st Cir. 2013) (citing *Garrett*, 295 F.3d at 98).  The Complaint in this case plainly alleges facts that would satisfy the first two elements.  It is alleged that Plaintiff is Black and it is alleged that, during the incident on June 18, 2020, Diaz made comments that evinced a discriminatory animus against Plaintiff based on his color.  Only the third element requires nuanced consideration.

4

The First Circuit's decisions in *Garrett* and in *Hammond* provide the starting point for identifying the standard to be applied in considering the sufficiency of §1981 allegations in the context of retail store transactions. After reviewing precedent from other circuits, the First Circuit in *Garrett* capsulized the standard as follows:

> [I]n order to satisfy the foundational pleading requirements for a suit under section 1981, a retail customer must actually allege that he was actually denied the ability either to make, perform, enforce, modify, or terminate a contract, or to enjoy the fruits of a contractual relationship, by reason of a race-based animus.

295 F.3d at 100–01 (citations omitted).  This standard takes into account the Supreme Court's caution that a plaintiff must "initially identify an impaired 'contractual relationship,' § 1981(b), under which the plaintiff has rights." *Domino's Pizza*, 546 U.S. at 476.  Otherwise, "§ 1981 would become a catch-all remedy to racial discrimination, 'produc[ing] satellite . . . litigation of immense scope.'" *Hammond*, 733 F.3d at 364 (quoting *Domino's Pizza*, 546 U.S. at 479).

An individual's rights under § 1981 are violated when there is some interference with that individual's ability to make, enforce, or perform a contract.  A purchase from a retail store inherently involves a contract within the scope of the statute.  *See Hammond*, 733 F.3d at 363-364; *see also Domino's Pizza*, 546 U.S. at 476 ("Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as impairs an existing contractual relationship.").

What, then, counts as a cognizable "interference," in the context of dealings between retail stores and customers?  Both *Hammond* and *Garrett* point to a bright-line distinction that turns on whether the customer was able to complete their transaction.

*Hammond* involved allegations that a Black customer had been subjected to unabashedly racist comments by a salesclerk.  733 F.3d at 361.  Because the customer was not ultimately refused service, the court found no violation of § 1981.  *Id.*  While the plaintiff was "humiliated

and deeply offended," the complaint did not allege that the plaintiff had been "unable to complete her [purchase]" or that the clerk "refused to perform [the] transaction." *Id.* at 364. Under these circumstances, the court ruled, the abusive comments were insufficient to constitute an interference under § 1981. *Id.*

The rationale for the *Hammond* decision draws directly from the earlier decision in *Garrett*, in which a Black customer alleged that three store employees conspicuously tailed him while shopping and later singled him out for an unfounded shoplifting complaint. *Garrett*, 295 F.3d at 96. Critically, the customer was able to purchase three items that he had sought. *Id.* Given that the purchase was ultimately consummated, the allegations were insufficient make out a cognizable claim under § 1981. *Id.*

Turning to the matter at bar, both sides contend that the caselaw supports their respective positions. The Complaint unmistakably alleges that Diaz refused to complete his purchase from Chelsea Liquor Mart after he asked her to double-bag his beer. Complaint, Docket No. 1, at ¶¶ 29-33.[2] This, he contends, amounts to an interference with his right to contract. Opp. to Motion to Dismiss, Docket No. 9, at 5-6. For their part, Defendants argue that there was no such interference because Folly-Notsron ultimately completed his purchase – albeit after the police arrived at the store.

Neither party has addressed head-on the crucial circumstance that distinguishes this case from other reported decisions – which is that the sales transaction was completed only after

---

[2] The alleged sequence of events, whereby Folly-Notsron apparently had no difficulty consummating his purchase until he asked Diaz to double-bag his beer [*see* Complaint, Docket No. 1, at ¶¶ 29-33], suggests that factors other than sheer racial or disability-based animosity might have been in play. But a motion to dismiss provides no occasion to weigh such possibilities – that's for the finder of fact. The compass of the inquiry under Rule 12(b)(6) is limited to whether a complaint plausibly alleges sufficient facts to support a claim.

police intervention.  There is, however, a reported case that addresses analogous circumstances, *Middleton v. Wells Fargo Bank, N.A.*, 474 F. Supp. 3d 1290 (N.D. Ga. 2020).  In *Middleton*, a Black customer visited a bank to cash a check, but the teller, and subsequently a service manager, accused the customer of passing a fraudulent check.  *Id.* at 1292-1293.  Ultimately, the branch manager called the police and demanded that the customer leave the bank.  *Id.*  The customer waited outside and spoke with the responding police officer, who found the check to be valid, whereupon the bank cashed the check.  *Id.*  The court found that the customer plausibly alleged a § 1981 violation that the bank "refused to contract with the [customer], told her to leave, and only cashed the check once law enforcement determined it was not fraudulent."  *Id.* at 1296.[3]

Common sense suggests that Plaintiff has made out a colorable claim.  After all, Plaintiff has alleged a refusal of service that was ostensibly complete.  *Cf. Middleton*, 474 F. Supp. 3d at 1297 ("Viewing these allegations in the light most favorable to the plaintiff, she attempted to contract with the defendant on two separate occasions that day. . . . The fact that she was successful in her second attempt is immaterial.").  Folly-Notsron has alleged that he was refused service unequivocally.  That refusal, according to the Complaint, was only reversed when the police arrived – presumably after some period of delay.  Even without resorting to the heuristic employed in *Middleton* (*viz.* dividing the sales transaction into two separate attempts to make a contract), there is an obvious difference between an ordinary retail purchase and one that is only completed under police supervision.

---

[3]  Notably, *Middleton* comes from the Eleventh Circuit, which employs a stringent standard for gauging whether there has been a refusal of service.  *See Lopez v. Target Corp.*, 676 F.3d 1230, 1234–35 (11th Cir. 2012) (ruling that a retail store must "thwart" the right to contract for a customer to allege a claim under § 1981).

On the face of the Complaint, the allegation that Defendants completed Folly-Notsron's purchase only after the police directed them to do so is sufficient to state a cognizable claim of impairment of contract rights.[4]

As noted above, because § 1981 and § 1982 claims are construed in *pari materia*, Defendants' argument for dismissal of the § 1982 claim is parallel to their argument for dismissal of the § 1981 claim.  Accordingly, the above reasoning for denying Defendants' motion to dismiss the § 1981 claim applies with equal force to the § 1982 claim.

I recommend that the Motion to Dismiss be denied as to Counts I and II.

**b. Count III (against Chelsea Liquor Mart): Violation of Prohibition of Discrimination in Places of Public Accommodation [42 U.S.C. § 2000a]**

Count III should be dismissed.  Folly-Notsron has failed to show that Chelsea Liquor Mart meets the definition of a "public accommodation" under Title II of the Civil Rights Act, 42 U.S.C. § 2000a.

To state a *prima facie* claim under § 2000a, a plaintiff must plausibly allege that: 1) he is a member of a protected class; 2) he attempted to exercise the right to full benefits and enjoyment of a place of public accommodation; 3) he was denied those benefits and enjoyment; and 4) he was treated less favorably than similarly situated persons who are not members of the protected class.  *See Manning v. Whole Foods Mkt. Grp., Inc.*, No. 21-CV-10833-ADB, 2022 WL 194999, at *6 (D. Mass. Jan. 21, 2022) (citation omitted).

---

[4]  It will, of course, be for a jury to determine what actually happened: whether Diaz spoke the words that have been attributed to her; whether any refusal of service was attributable to discriminatory animus or was simply a dispute about double-bagging; how long Folly-Notsron was delayed in completing his purchase; and whether the purchase was completed as a result of police intervention.

Folly-Notsron's § 2000a claim founders on the "place of public accommodation" element.  Section 2000a prohibits discrimination on the ground of race, color, religion, or national origin only in specifically enumerated places of public accommodation, and the definition of public accommodation is notably narrow.  Specifically, the statute defines places of public accommodation as:

> (1) any inn, hotel, motel, or other establishment which provides lodging to transient guests…;
>
> (2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station;
>
> (3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment; and
>
> (4) any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishments.

42 U.S.C. § 2000a(b).

Under § 2000a, a place of public accommodation is *not* merely a business that is open to the public.  It must be one of the particular types of business that are expressly designated in the statute.  As one court of appeals has noted, § 2000a "sets forth a comprehensive list of establishments that qualify as a 'place of public accommodation,' and in so doing excludes from its coverage those categories of establishments not listed."  *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 431 (4th Cir. 2006) ("The plain text of the statute demonstrates that beauty salons are not covered by Title II.  They are not mentioned in any of the numerous definitions of 'place of public accommodation.'"); *see Martillo v. Twitter Inc.*, No. 21-CV-11119-RGS, 2021 WL 8999587, at *1 (D. Mass. Oct. 15, 2021), *aff'd*, No. 21-1921, 2022 WL 18862030 (1st Cir. Oct. 4, 2022), *cert. denied*, 143 S. Ct. 779 (2023) (holding that a virtual chatroom does not meet

the definition of "public accommodation" under § 2000a because "[t]he definition enumerated only actual physical establishments and structures" such as hotels and restaurants).

Retail stores such as the Chelsea Liquor Mart are not places of public accommodation under § 2000a unless they otherwise meet an enumerated definition. *See Priddy v. Shopko Corp.*, 918 F. Supp. 358, 359 (D. Utah 1995) ("It is clear that Congress did not intend for retail establishments . . . to be included in § 2000a"); *Gigliotti v. Wawa Inc.*, No. CIV. A. 99-3432, 2000 WL 133755, at *2 (E.D. Pa. Feb. 2, 2000) (finding that a convenience store was not a place of public accommodation under § 2000a because it did not offer food for on-premises consumption).

Plaintiff acknowledges that the language of § 2000a is narrow, but suggests that the Court should borrow a broader definition of "public accommodation," from the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq. See* Opp. to Motion to Dismiss, Docket No. 9, at 8. As discussed below, the ADA definition of "public accommodation" does indeed extend to the Chelsea Liquor Mart. *See* 42 U.S.C. § 12181(7) (enumerating certain retail businesses, including "shopping center" and "other sales . . . establishment," as public accommodations).

Plaintiff argues that because the Chelsea Liquor Mart counts as a public accommodation under the ADA – which governs his claim of disability discrimination – the same definition should govern his Title II race discrimination claim. To support this notion, Plaintiff points to broad principles of statutory construction aimed at reconciling potentially conflicting federal laws. *See* Opp. to Motion to Dismiss, Docket No. 9, at 8.

It is true that the Supreme Court has cautioned courts to "to interpret Congress's statutes as a harmonious whole rather than at war with one another." *Epic Sys. Corp, v. Lewis,* 138 S. Ct.

1612, 1619 (2018).  But this principle only comes into play when statutory provisions are ambiguous, and when particular constructions would bring them into direct conflict.  Here, the statute is unambiguous, and there is no conflict.  The mere fact that Congress set different parameters for two different anti-discrimination laws – enacted about 25 years apart – does not amount to a conflict.

We begin with the plain language of the statutes.  As the First Circuit has noted, "[i]f the statute's language is plain, the sole function of the courts is to enforce it according to its terms."  *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 919 F.3d 121, 128 (1st Cir. 2019) (internal quotations and citations omitted).

Congress passed a law, the Civil Rights Act of 1964, and more than two decades later passed a second law, the ADA.  Each contains a different definition of "public accommodation."  In enacting the ADA, Congress made no mention of the definition of the definition of "public accommodation" that had been used in the Civil Rights Act.  And there is nothing in the ADA to suggest that it overrides, repeals, or otherwise revises the provisions of the Civil Rights Act.  Had Congress intended such a result, it could have said so.  "However, 'repeals by implication are disfavored,' and 'where two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.'"  *Rezendes v. Mitsubishi Motors N. Am., Inc.*, No. 22-CV-10211-AK, 2023 WL 1864405, at *7 (D. Mass. Feb. 9, 2023) (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1017 (1984)).  "Courts presume that 'Congress will specifically address preexisting law when it wishes to suspend its normal operations in a later statute,' and the burden is on the party arguing that the older statute was repealed to show 'a clearly expressed congressional intention' that 'two statutes

cannot be harmonized.'" *Id.* (quoting *Epic*, 138 S. Ct. at 1624).  Plaintiff has not attempted to scale this pinnacle.

Leaving aside that there is no indication that the ADA's definition of "public accommodation" replaces or modifies the definition of that term in § 2000a, there is – in any event – no real conflict between the inconsistent definitions.  One can readily imagine reasons why Congress might have chosen different definitions of "public accommodation" for the ADA and the Civil Rights Act.  For example, unlike racial discrimination, discrimination on the basis of disability often concerns the physical design and construction of buildings.

As a further fallback argument, Plaintiff contends that the language of § 2000a(d) provides an "alternative" to the "narrow definition of public accommodation."  Opp. to Motion to Dismiss, Docket No. 9, at 9.  But nothing in § 2000a supports such a reading.  The definition of "public accommodation" is unambiguously set forth in § 2000a(b): "Each of the following establishments which serves the public is a place of public accommodation within the meaning of this subchapter if its operations affect commerce, or if discrimination or segregation by it is supported by State action."  Section 2000a(d), which Plaintiff points to, defines the term "support by State action."  In other words, § 2000a(d) simply defines *when* discrimination by a place of public accommodation is actionable under § 1981; it does not expand the definition of such places.

Count III should be dismissed because a retail liquor store does not meet any of the enumerated definitions – it does not provide lodging, offer food to eat on-premises, or provide entertainment – and therefore is not a place of public accommodation for the purposes of § 2000a.

**c. Count IV (against Chelsea Liquor Mart): Violation of the Americans with Disabilities Act**

For much the same reasons as apply to Plaintiff's claims under §§ 1981 and 1982, Folly-Notsron has plausibly alleged a claim for violations of his rights under the ADA.  The ADA prohibits discrimination on the "basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).

As noted above, the allegation that Diaz made disparaging comments about Folly-Notsron's disability suffices to plausibly allege that the alleged refusal of service was motivated by an animus based on his disability.

Under the ADA, a retail liquor store constitutes a place of public accommodation.  *See Dudley v. Hannaford Bros. Co.,* 333 F.3d 299, 308 (1st Cir. 2003) (holding that a retail supermarket that sells liquor is a place of public accommodation within the purview of the ADA).

Defendants' argument for dismissal of the ADA claim rests on the same basis as its argument for dismissal of the race-based discrimination claims.  As already discussed, in light of the allegations that Folly-Notsron was permitted to complete his purchase only after the police intervened, the Complaint plausibly alleges discrimination on the basis of disability.

Accordingly, I recommend that the Motion to Dismiss be denied as to Count IV.

**d. Count V (against all Defendants): Impairment of Civil Rights [Massachusetts General Laws, c. 12, §11I]**

Count V should be dismissed.  Folly-Notsron has not plausibly alleged that Defendants' conduct constitutes an impairment of his civil rights within the ambit of Massachusetts' civil rights law, Massachusetts General Laws, c. 12, § 11I.

Under Massachusetts law, impairment of civil rights prohibits "actual or attempted interference with another's constitutional or legal rights 'by threats, intimidation, or coercion.'" *Murrow v. Makrigiannis,* 96 Mass. App. Ct. 1112 (2019) (quoting Mass. Gen. L. c. 12, § 11I). Courts apply an "objective standard of whether a reasonable [person in same or similar circumstances] would be threatened, intimidated, or coerced by the defendants' conduct." *Planned Parenthood League of Massachusetts, Inc. v. Blake*, 417 Mass. 467, 474–75 (1994).

A threat is an "intentional exertion of pressure to make another fearful or apprehensive of injury or harm." *Murrow,* 96 Mass. App. Ct. at 1112. Intimidation, in turn, involves "putting [someone] in fear for the purpose of compelling or deterring conduct." *Planned Parenthood*, 417 Mass. at 474. And coercion is the "application to another of such force, either physical or moral, as to constrain him to do something against his will he would not otherwise have done." *Id*. (citing *Delaney v. Chief of Police,* 27 Mass. App. Ct. 398 (1989)). Even intentional frustration of a person's exercise of their civil rights, such as the refusal of service that Folly-Notsron alleges, does not "by itself involve threats, intimidation, or coercion" and does not violate the statute. *Longval v. Commissioner of Correction,* 404 Mass. 325, 333 (1989) (citing *Pheasant Ridge Assocs. Ltd Partnership v. Burlington,* 399 Mass. 771, 781 (1987)).

The Complaint does not allege any facts to suggest that Defendants subjected Folly-Notsron to any threats, intimidation, or coercion. Nor does Folly-Notsron allege that he was forced to do anything against his will. There is no allegation of physical touching, blocking of exits, or other such assaultive or alarming behavior. *See Planned Parenthood,* 417 Mass. at 471, 476 (finding that the conduct of protestors who trespassed into an abortion clinic where they blocked doors, sat in examination rooms, and locked themselves to one another, amounted to

threats, intimidation, and coercion).  At most, the Complaint alleges offensive verbal comments, followed by an insulting refusal of service.

Accordingly, the Complaint does not plausibly allege that a reasonable person in Folly-Notsron's circumstances would feel as though his rights had been interfered with by way of threats, intimidation, or coercion.

Count V should be dismissed.

e. **Count VI (against all Defendants): Discrimination — Race, Color, Religious Creed, National Origin, Sex, Sexual Orientation, Deafness, Blindness, Physical or Mental Disability or Ancestry [Massachusetts General Laws, c. 272, § 98]**

As discussed above, Folly-Notsron has plausibly alleged that he was refused service based on his race and disability.  These allegations also make out a violation of Massachusetts' public accommodation law, Massachusetts General Laws, c. 272, § 98.  This statute prohibits "distinction, discrimination or restriction on account of race, color, . . . deafness, blindness or any physical or mental disability or ancestry relative to the admission of any person to, or his treatment in any place of public accommodation[.]"  Mass. Gen. L. c. 272, § 98.  "Interpretation of Massachusetts Public Accommodation Statute proceeds hand in hand with the interpretation of the Americans with Disabilities Act[.]"  *Lesley v. Chie*, 81 F. Supp. 2d 217, 226 (D. Mass. 2000), *aff'd sub nom. Lesley v. Hee Man Chie*, 250 F.3d 47 (1st Cir. 2001) (quotation omitted).

Notably, § 98 defines a public accommodation as "any place . . . which is open to and accepts the patronage of the general public . . . [including] a retail store or establishment."  Mass. Gen. L. c. 272, § 92A.  A retail liquor store plainly qualifies as a place of public accommodation under this statute.

Along the same lines as their arguments with respect to the federal statutes, Defendants contend that Folly-Notsron was not denied the goods he sought in a place of public

accommodation because he was ultimately able to complete his purchase.  As discussed above, the Complaint has plausibly alleged that Folly-Notsron was discriminated against on the basis of race and blindness.

Defendants also argue that Diaz's alleged statement ("I don't need your Black, blind money"), was a "stray remark" that does not support a discrimination claim.  *See* Motion to Dismiss, Docket No. 7, at 9 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[O]ffhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.") (internal citation omitted)). A critical flaw in this contention is that the Complaint does not simply allege that Folly-Notsron was subjected to ugly epithets; it alleges that he was refused service.  Under the circumstances, the Complaint plausibly alleges that Diaz's alleged remarks evidenced a discriminatory motive animating such refusal of service.  There is no occasion to decide, at this stage of the case, whether such remarks, standing alone, would suffice to make out a claim under § 98, because the Complaint plausibly alleges a denial of service, and plausibly alleges that such denial was animated by a discriminatory intent.

What Diaz may have said, and what she may have meant, are not matters to be resolved by parsing the pleadings.  *See Rochat v. L.E.K. Consulting, LLC*, 83 Mass. App. Ct. 1108 (2013) ("Whether a given remark is 'ambiguous'—whether it connotes discriminatory animus or it does not—is precisely what a jury should resolve, considering all of the facts in context.") (quoting *Diaz v. Jiten Hotel Mgmt., Inc*., 762 F. Supp. 2d 319, 323 (D. Mass. 2011)).  What has been alleged makes out a claim under Massachusetts General Laws, c. 272, § 98.

I recommend that the Motion to Dismiss be denied as to Count VI.

**f.  Count VII (against all Defendants): Violation of Equal Rights for All Persons Within Commonwealth [Massachusetts General Laws, c. 93, § 102]**

Count VII is brought under Massachusetts General Laws, c. 93, § 102, which provides that, "All persons within the commonwealth, regardless of sex, race, color, creed or national origin, shall have, except as is otherwise provided or permitted by law, the same rights enjoyed by White male citizens, to make and enforce contracts[.]"  Mass. Gen. L. c. 93, § 102.  Section 102 tracks the anti-discrimination statutory language found in the federal statutes, 42 U.S.C. §1981 and §1982, on which Counts I and II rest.

For the reasons discussed above concerning Counts I and II, I recommend that the Motion to Dismiss be denied as to Count VII.

**g.  Count VIII (against Chelsea Liquor Mart): Civil Remedies of Consumers [Massachusetts General Laws, c. 93A, § 9]**

Folly-Notrson has alleged that he was a consumer and was subjected to racial discrimination, in violation of Massachusetts General Laws, c. 93A, § 9.  Massachusetts law provides a right of action for consumers who are damaged by "unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. L. c. 93A, § 9.  To state a claim under Chapter 93A, a plaintiff must show: "1) a deceptive act or practice on the part of the seller; 2) an injury or loss suffered by the consumer; and 3) a causal connection between the seller's deceptive act or practices and the consumer's injury."  *Casavant v. Norwegian Cruise Line, Ltd.,* 76 Mass. App. Ct. 73 (2009).

The Massachusetts courts have recognized racial harassment as an unfair trade practice under Chapter 93A.  *See Ellis v. Safety Ins. Co.,* 41 Mass. App. Ct. 630, 640 (1996) ("Racial harassment in the course of doing business is conduct fairly described as immoral, unethical, or oppressive for the purposes of G.L.c.93A.").

17

There is some force to Defendants contention that a Chapter 93A claim fails if the underlying discrimination claim is without basis.  *See* Motion to Dismiss, Docket No. 7, at 11 (citing *Hennessey v. Berger*, 403 Mass. 648, 652-653 (1988)).  As discussed above, however, Folly-Notsron has plausibly alleged that he was subjected to racial discrimination and harassment when he was told to leave the Chelsea Liquor Mart. Accordingly, he has also plausibly alleged a claim under Chapter 93A.

The Motion to Dismiss should be denied as to Count VIII.

## CONCLUSION

I **RECOMMEND** that Defendants' Motion to Dismiss (Docket No. 6) be **DENIED** as to Counts I, II, IV, VI, VII, and VIII, and **GRANTED** as to Counts III and V. [5]

/s/ Paul G. Levenson
United States Magistrate Judge

Date:    April 27, 2023

---

[5] The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. *See Keating v. Secretary of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).